IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REGISTERED AGENT SOLUTIONS, INC.

   *Plaintiff*,

v.             No. 1:21-cv-786-SB

CORPORATION SERVICE COMPANY

   *Defendant*.

---

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, Delaware; Kristina D. McKenna, Sheryl Koval Garko, Ryan C. Wooten, Shayan Said, ORRICK, HERRINGTON & SUTCLIFFE LLP, Boston, Massachusetts, Houston, Texas, San Francisco, California.

                    *Counsel for Plaintiff*.

Jonathan A. Choa, Daniel Rusk, POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware; Eric M. Fishman, Jay. D. Dealy, Max. A. Winograd, PILLSBURY WINTHROP SHAW PITTMAN LLP, New York, New York.

                    *Counsel for Defendant*.

---

**MEMORANDUM OPINION**

March 28, 2022

BIBAS, *Circuit Judge*, sitting by designation.

Companies may not malign their competitors to get ahead in the marketplace. But the law allows good-faith competition: as long as a business does not mislead or lie, it may brag and put down its competitors. This case turns on whether Corporation Service Company crossed that line.

A competitor, Registered Agent Solutions, says Corporation Service made false or misleading claims about Registered Agent. But its complaint does not support that allegation. Many of Corporation Service's statements were true. Others were exaggerations or predictions about the future. So Registered Agent's Lanham Act, state-statute, and common-law claims fail.

## I. BACKGROUND

Registered Agent and Corporation Service are competitors in the legal-services industry. D.I. 20 ¶¶ 1–2. Both act as agents for companies: they provide addresses that accept service of legal documents, then process those documents and forward them to the client company. Each offers services nationwide. *Id.* ¶ 10; D.I. 24, at 3–4.

Of the two companies, Registered Agent is the new kid on the block. D.I. 24, at 3–4. But it has grown quickly and was recently acquired by Lexitas, a group of legal services providers. That set Registered Agent up for the future and gave "current and future Lexitas customers access to [Registered Agent's] services." D.I. 20 ¶ 12.

Corporation Service saw that acquisition as a threat. D.I. 20 ¶ 2. So it went on the offensive, emailing Registered Agent customers and encouraging them to jump ship. *Id.* at 17, 19. It told them that Lexitas did not "currently offer" registered-agent

2

services, that Registered Agent's acquisition might lead to "changes and surprises," and that there had been "fraudulent activity" involving filings in California. *Id.* ¶¶ 17, 19, 29.

Registered Agent saw this as a "false advertising campaign … to promote [Corporation Service's] services by spreading false information … about [Registered Agent]." *Id.* ¶ 34. So it asked Corporation Service to stop. Though Corporation Service assured its rival that it would desist, it kept reaching out to Registered Agent's customers. *Id.* ¶¶ 37, 40.

So Registered Agent sued Corporation Service, asserting claims for false advertising, unfair competition, deceptive trade practices, and tortious interference with its business. Corporation Service moves to dismiss. To survive, Registered Agent's complaint must contain enough facts to "state … claim[s] to relief that [are] plausible on [their] face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It does not.

## II. REGISTERED AGENT'S LANHAM ACT CLAIM FAILS

Before reaching the merits of Registered Agent's Lanham Act false-advertising claim, I must resolve a threshold issue. Is that claim governed by the heightened Rule 9(b) "particularity" standard for pleading fraud or the lesser plausibility standard used for all other claims? *See* Fed. R. Civ. P. 9(b).

Surprisingly, the Third Circuit has not answered that question yet. So I start from first principles. Rule 9(b) requires "fraud or mistake" to be plead with "particularity." *Id.* So where a claim "sounds in fraud, … 9(b)'s heightened pleading standard applies." *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007). Thus,

3

even if claims do not necessarily involve fraud, they must meet the heightened pleading standard if their "specific factual allegations ... charge defendants with fraud." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287–89 (3d Cir.1992).

That approach makes sense. Rule 9 ensures that claims of misrepresentation are pleaded in detail. That "polic[y] [is] equally applicable to ... misrepresentation claims ... [under the] Lanham Act." *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985); *see also Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014) (holding that when a Lanham Act claim asserts "a form of fraud," a court should "expect [the] complaint to allege with particularity the nature of the grievance" under 9(b)).

Here, Registered Agent's Lanham Act claim sounds in fraud. The touchstone of fraud is the intent to mislead. So a claim "sound[s] in fraud" if "[t]he specific factual allegations on which [it] is based ... aver that [a] defendant[] 'intentionally,' 'knowingly,' or 'recklessly' misrepresented ... certain material information." *Shapiro*, 964 F.2d at 287. Under that test, this case is clear cut: Registered Agent alleges that "[Corporation Service] made its false and misleading statements knowingly and willfully, or recklessly." D.I. 20 ¶¶ 58, 59.

Thus, I will test this Lanham Act claim under Rule 9(b). Registered Agent "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). And it should "inject[] precision ... into [its] allegations" by providing "the date, place or time of the fraud," and by stating "who made [the] misrepresentation to whom and

4

[its] general content." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012) (internal quotation marks omitted).

Under that standard, Registered Agent fails to state a claim under the Lanham Act. (Because the pleading standard is unsettled, I note that I would have reached the same result for all but one of Registered Agent's statements under the laxer plausibility standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**A. Registered Agent alleges no actionable misstatement**

To state a false-advertising claim under the Lanham Act, Registered Agent must plead that:

- Corporation Service "made false or misleading statements" about Registered Agent's services in a "commercial advertis[ement] or promotion";
- those statements were "actual[ly] decepti[ve]" or had a "tendency to deceive";
- the deception was "likely to influence purchasing decisions";
- Corporation Service's ad was distributed in interstate commerce; and
- Registered Agent was likely injured as a result.

15 U.S.C. § 1125(a)(1)(B); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (quoting *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011)).

Each challenged statement must "satisf[y] all [the] Lanham Act['s] requirements." *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299 (4th Cir. 2017). Registered Agent may not "mix and match statements, with some satisfying one Lanham Act element and some satisfying others." *Id.*; *see Johnson & Johnson Vision Care, Inc. v. 1–800*

5

*Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002). Thus, I will analyze each of Corporation Service's alleged misstatements as separate claims.

*1. Registered Agent "handle[s] [everything] online."* Registered Agent says Corporation Service told a prospective Registered Agent customer that it "handle[s] [everything] online." D.I. 20 ¶ 15; D.I. 20-1, Ex. 1. It complains that statement was false or misleading because it has "brick and mortar locations across the country." D.I. 20 ¶ 16.

But that claim suffers from a few defects. To start, Registered Agent does not make its allegation precisely enough. It never explains who at Corporation Service said that or when. *See* D.I. 20-1, Ex. 1.

Plus, even if it had given more detail, Registered Agent does not explain how a phone call to a single customer counts as "commercial adverting" covered by the Lanham Act. 15 U.S.C. § 1125(a)(1)(B). Advertisements are promotions that are broadly "disseminated … to the relevant purchasing public … within [an] industry." *Incarcerated Ent., LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 358 (D. Del. 2018) (quoting *Gordon & Breach Sci. Publishers v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)). Yet Corporation Service allegedly told just one customer that Registered Agent conducted its business online. That is not enough.

Registered Agent counters that, on a motion to dismiss, I may not decide whether statements are sufficiently broadcasted to be "advertising." D.I. 25, at 6 (citing *Refundo, LLC v. Drake Enters., Ltd.*, 2013 WL 1750016, at *5 (D.N.J. Apr. 22, 2013)). True enough. But it must still allege "enough facts to raise a reasonable expectation

that discovery will reveal evidence of [dissemination]." *N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc., No.*, 2014 WL 317179, at *5 (D.N.J. Jan. 28, 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). And to do that, it must "identify some medium or means through which [Corporation Service] disseminated information to a particular class of consumers." *Id.* (quoting *Podiatrist Ass' n, Inc. v. La Cruz Azul*, 332 F.3d 6 (1st Cir. 2003)).

Yet Registered Agent does not explain how Corporation Service told customers that it was an online-only business. Indeed, it does not even say the statement *was* distributed more broadly. So Registered Agent's first Lanham Act claim fails.

*2. "Fraudulent activity."* Registered Agent next alleges that Corporation Service notified Registered Agent's customers that Corporation Service had detected "fraudulent activity" surrounding business filings with the California Secretary of State. D.I. 20 ¶ 17; D.I. 20-1, Ex. 4; *Simi Valley, CA 93063*, 2014 WL 12707311, at *4 (C.D. Cal. June 2, 2014) (describing the filing requirement). To support that allegation, it attaches an email in which Corporation Service told Registered Agent customers that "[Corporation Service] identified what appeared to be unauthorized … filings in California," touting its "investment in technology and service[s] [which] allowed [it] to get in front of th[e] situation as it unfolded." D.I. 20-1, Ex. 4.

But as Registered Agent concedes, those claims are not false. California itself acknowledged that it had received fraudulent filings and said that it had notified affected companies. D.I. 20 ¶ 17. And Registered Agent does not contest Corporation Service's claim that its software detected the issue.

7

Instead, Registered Agent argues that Corporation Service's email misleadingly suggested that Registered Agent's customers were affected by the fraud. *Id.* Yet that argument is implausible. Corporation Service's email does not mention Registered Agent. Plus, the email makes clear that "impacted customers … whether [Corporation Service] clients or not" had already been notified. D.I. 20-1, Ex. 4. So no reasonable customer could read the email and mistakenly think that their filings were involved.

   *3. "[A]cquired by … a private equity [firm]."* Registered Agent also complains that its customers heard from Corporation Service that Registered Agent had "been acquired by APAX, a private equity company, and [was] assigned to Lexitas, … [a] court reporting and deposition company." D.I. 20 ¶ 19.

That email, Registered Agent grumbles, is false: it was not acquired by APAX. Instead, it was acquired by "Chronicle Bidco Inc.," the corporation that actually owns Lexitas. D.I. 20 ¶ 12. Plus, it says, Corporation Service's email falsely suggested that "[Registered Agent] was now being run by entities with no registered agent service experience." D.I. 20 ¶ 20.

But the complaint does not support that theory. Even if Corporation Service's statement was technically false and APAX was not involved in Registered Agent's acquisition, that statement is not material. No reasonable customer would care whether Lexitas acquired Registered Agent using APAX's investment or Chronicle Bidco's investment. So it is not the kind of misstatement that "is likely to influence

8

purchasing decisions." *Groupe SEB USA*, 774 F.3d at 198 (quoting *Pernod Ricard*, 653 F.3d at 248)).

Corporation Service's email also said that the acquisition might leave Registered Agent's customers "at the mercy of … changes and surprises." D.I. 20-1, Ex. 5. But that claim is mere puffery, not a "statement[] of fact capable of being proven false." *Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 679 (D. Del. 2008). So it is not actionable under the Lanham Act.

*4. "[R]egistered agent services isn't a service they currently offer."* Corporation Service allegedly told its rival's customers that Registered Agent did not "currently offer" registered-agent services. D.I. 20 ¶ 30. To support that assertion, Registered Agent attaches an email Corporation Service sent to its customers. In relevant part, that email reads as follows:

> I am following up on information you likely received from your [Registered Agent] service rep. Now that they have been acquired by APAX, a private equity company, and have been assigned to Lexitas, their court reporting and deposition company. Most concerning and as you'll notice from **their website**, is that registered agent services isn't a service they currently offer.

D.I. 20 ¶ 29 (the bold text is a hyperlink to Lexitas's website); D.I. 20-1, Ex. 9.

For Registered Agent's theory to work, the last sentence of the email must refer to Registered Agent, not Lexitas. (Registered Agent does not dispute that *Lexitas* did not offer registered-agent services.) But that is not a natural reading of the email. The closest referent to "their website" is Lexitas, not Registered Agent. And the hyperlink goes to Lexitas's website, not Registered Agent's. So a reasonable consumer would likely read the email to refer to Lexitas. Indeed, that reading is reinforced by

9

context. Corporation Service allegedly sent the email to Registered Agent customers who would *know* that Registered Agent "currently offer[s]" registered-agent services because they had bought them. D.I. 20 ¶ 29.

Registered Agent also says Corporation Service "followed [its] email with multiple calls to [Registered Agent's] clients, verbally informing them that [Registered Agent] does not offer registered agent services." D.I. 20 ¶ 31. But here Rule 9(b) makes a difference: Registered Agent's bare assertion falls well below that pleading standard. Registered Agent does not say when Corporation Service made the calls or who received them. That imprecision dooms Registered Agent's claim. *See Kuhn Constr. Co.*, 844 F. Supp. 2d at 530.

*5. "[Registered Agent is] going out of business soon."* Finally, Registered Agent pleads that Corporation Service told "multiple [Registered Agent] customers that [Registered Agent] had been sold and was going out of business." D.I. 20 ¶¶ 41–42. This time its allegation is precise enough: it attaches emails from customers reporting when and to whom Corporation Service made its misleading phone calls. D.I. 20-1, Exs. 13–15.

Yet the emails reveal that Corporation Service said that Registered Agent was "*going out of business soon.*" D.I. 20-1, Ex. 13. That is a prediction about the company's future performance, not a misleading statement of fact. And other courts have consistently held that "[p]redictions of future events are … nonactionable expressions of opinion" under the Lanham Act. *Eastman Chem. Co. v. Plastipure, Inc.,* 775 F.3d 230, 235 (5th Cir. 2014); *see also Glob. Tech Led, LLC v. Hilumz Int'l Corp.*, 2017 WL

10

588669, at *6 (M.D. Fla. Feb. 14, 2017) (saying that a competitor is "going out of business" is a "non-verifiable prediction of opinion about the future" and so is "not actionable … under the Lanham Act.") (internal quotation marks omitted). That approach fits with the Third Circuit's direction that statements "expressed in broad [or] vague language" are not actionable. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993).

Indeed, suppose Registered Agent showed that it had stable finances and concrete plans for future growth. That would not *prove* that it was not "going out of business soon," just that it was unlikely to. Thus, it is not an actionable "statement[] of fact capable of being proven false." *Parker*, 530 F. Supp. 2d at 679; *see also* 15 U.S.C. § 1125(a)(1) (only "false or misleading description[s]" or representations "of fact" are actionable under the Lanham Act). Conversely, if Corporation Service had said that Registered Agent was "*currently* going out of business," or "*in the process* of closing," those statements would be actionable.

Because Registered Agent fails to identify any false or misleading commercial advertisement, I will dismiss its Lanham Act claims. But I do so without prejudice to give it another chance to state a claim.

### III. REGISTERED AGENT'S CALIFORNIA UNFAIR-COMPETITION AND FALSE-ADVERTISING CLAIMS FALL WITH ITS LANHAM ACT CLAIMS

Registered Agent also alleges that Corporation Service's marketing campaign was an "unlawful and unfair business practice" that violated two provisions of California's Unfair Competition Law. D.I. 20 ¶¶ 65, 77.

11

One section bans "unlawful, unfair[,] or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue[,] or misleading advertising." Cal. Bus. & Prof. Code §§ 17200, 17206 (Unfair Competition Law). Another bars "untrue or misleading" advertising "which is known, or which by the exercise of reasonable care should be known, to be true or misleading." Cal. Bus. & Prof. Code § 17500 (False Advertising Law).

To state its unfair-competition claim, Registered Agent must identify an "advertising claim [that is] is false or misleading." *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342 (Cal. Ct. App. 2003). And because unfair-competition and false-advertising claims are subject to Rule 9(b)'s heighted pleading standard, Registered Agent must plead those claims specifically. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Yet Registered Agent's California claims stumble over the same hurdles that doomed its Lanham Act claims. *See, e.g.*, *Pacific Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, 2019 WL 668843, at *5 (D. Del. Feb. 19, 2019) (because plaintiff's Lahnham Act claim fails, its "false advertising claim under California state law … must also be dismissed").

- Two statements are not false or misleading: (1) Corporation Service's claim that it had detected "fraudulent activity" in California; and (2) Corporation Service's claim that Lexitas did not offer registered-agent services.

- Another statement—that Registered Agent was "going out of business soon"—is not actionable. *See City of San Francisco v. Purdue Pharma L.P.*,

12

> 491 F. Supp. 3d 610, 693–94 (N.D. Cal. 2020) ("California treats … statement[s] of opinion[] as inactionable.") (internal quotation marks omitted).

- Corporation Service's statement that APAX funded Lexitas's acquisition of Registered Agent is not likely to deceive an "ordinary consumer acting reasonably under the circumstances." *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1138 (S.D. Cal. 2021) (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012)). Indeed, Corporation Service's email clarified that *Lexitas* was the direct buyer.

- Finally, Corporation Service's claim that Registered Agent "handle[s] [everything] online" is not by itself grounds for liability. D.I. 20 ¶ 15. Registered Agent never says who made these statements or pleads enough facts to show dissemination. So it flunks Rule 9(b)'s heightened pleading standard.

Thus, Registered Agent's California unfair-competition claims fail. But again, I dismiss them without prejudice so Registered Agent can try again.

## IV. REGISTERED AGENT DOES NOT PLEAD A CONTINUING INJURY TO ANCHOR ITS DELAWARE DECEPTIVE-TRADE-PRACTICES-ACT CLAIM

The Delaware Uniform Deceptive Trade Practices Act bans "disparag[ing] the goods, services, or business of another by false or misleading representation[s] of fact." Del. Code Ann. tit. 6, § 2532(a)(8). But the Act redresses ongoing practices, not past wrongs. So "relief under the statute is dependent on [Registered Agent's] entitlement to injunctive relief." *Wright v. Portfolio Recovery Affiliates*, 2011 WL 1226115, at *5 (D. Del. Mar. 30, 2011). To show that entitlement, Registered Agent must plead facts "that create a reasonable apprehension of a future wrong." *State ex rel. Brady v.*

13

*Pettinaro Enters.*, 870 A.2d 513, 536 (Del. Ch. 2005) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 606 (Del. Ch. 1987)).

But here, the alleged wrongdoing is in the past. Indeed, Registered Agent asserts that "[Corporation Service]'s marketing campaign *has been* directed to [its] customers," and that its campaign "*has taken its toll* on [Registered Agent]'s reputation." D.I. 20 ¶¶ 44, 47 (emphases added). Plus, Registered Agent's amended complaint—filed in July 2021—expressly puts an end date on Corporation Service's conduct: "[Corporation Service] continued contacting [Registered Agent] customers through March 2021." *Id.* ¶ 42.

Registered Agent has not shown a "reasonable apprehension" that Corporation Service's campaign is ongoing, so I dismiss its Deceptive Trade Practices Act claims without prejudice. If it adds allegations that Corporation Service is still misleading its customers, it may yet state a claim.

## V. REGISTERED AGENT FAILS TO STATE A TORT CLAIM

Finally, Registered Agent brings common-law claims for interference with business relations and unfair competition. Those two torts are "similar[]." *See Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009). So I assess them together.

To state a claim for interference of business relations, Registered Agent must allege that Corporation Service intentionally interfered with its "reasonab[ly] probab[le]" business opportunities, causing it to lose money. *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001). For its unfair-competition claim, it must plead that it had "a reasonable expectancy of entering a valid business relationship, with which

14

[Corporation Service] wrongfully interfer[ed], … defeat[ing] [Registered Agent's] legitimate expectancy and caus[ing] [it] harm." *Rypac Packaging Mach. Inc. v. Coakley*, 2000 WL 567895, at *8 (Del. Ch. May 1, 2000).

Thus, for both, Registered Agent must identify a *specific* business relationship or opportunity. Yet it does not. Vague assertions that "[Registered Agent] lost over 70 clients" or "[Registered Agent] customers … switched to [Corporation Service]" are not enough. D.I. 20, at 45–46. *Cf. Agilent Techs, Inc.*, 2009 WL 119865, at *6 (allowing both claims to proceed where a plaintiff "alleged four [specific] interactions between [defendant] and potential … customers").

So I dismiss Registered Agent's tort claims without prejudice. It may yet identify specific ventures with which Corporation Service interfered.

\* \* \* \* \*

Registered Agent alleges that Corporation Service made false or misleading claims about it. But its complaint does not support those allegations. Many of Corporation Service's statements were true. Others were exaggerations or predictions about the future. Because Registered Agent does not plead that Corporation Service crossed the line, I dismiss all its claims without prejudice.